SEALED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

(1) MATHIS LEMONS,
(2) ISMAEL MORALES,
Defendants

Criminal No. 15cr 10259

Violations:
18 U.S.C. § 371 (Conspiracy);
18 U.S.C. § 666 (Corrupt Receipt of Payments by Agent of Organization Receiving Federal Funds);
18 U.S.C. § 2 (Aiding and Abetting);
18 U.S.C. § 981(a)(1)(C) & 18 U.S.C. § 2461(c) (Criminal Forfeiture)

**INDICTMENT**

The grand jury, in and for the District of Massachusetts, charges that:

**COUNT ONE**
(18 U.S.C. § 371 – Conspiracy to Commit Bribery)

At times relevant to this Indictment:

1. Defendant MATHIS LEMONS (LEMONS) was a resident of Brockton, Massachusetts.

2. Defendant ISMAEL MORALES (MORALES) was a resident of Jamaica Plain, Massachusetts.

3. Cornerstone Corporation (Cornerstone) was the Management Agent for Roxse Residences Limited Partnership, which owned the Roxse Homes subsidized housing development located at 1050 Tremont Street in Roxbury, Massachusetts.

4. LEMONS was employed by Cornerstone as an Assistant Property Manager at Roxse Homes.

5. MORALES was employed by Cornerstone as a Maintenance Technician at Roxse Homes.

6. MassHousing was a quasi-public agency charged with increasing affordable rental and for-sale housing in Massachusetts.

7. Roxse Residences Limited Partnership participated in Housing Assistance Payments (HAP) contracts administered by MassHousing, pursuant to Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f (Section 8).

8. The HAP Program assisted eligible low-income individuals and families to obtain housing. Under Section 8, people with low incomes obtain rental housing on the private market, subject to guidelines set by the United States Department of Housing and Urban Development (HUD). Participants in the program pay a certain percentage of their income toward the rent, while the Section 8 money supplied by HUD pays the remainder of the rent to the landlord.

9. Roxse Residences Limited Partnership received rent subsidy payments in excess of $1,000,000 per year from HUD pursuant to a HAP contract administered by MassHousing.

10. Cornerstone received a management fee from Roxse Residences Limited Partnership, derived from the rental income from the Roxse Homes apartments.

11. The Section 8 HAP program requires housing authorities (such as MassHousing), project owners (such as Roxse Residences Limited Partnership) and management agents (such as Cornerstone) to comply with HUD regulations in administering subsidized housing projects.

12. Defendant LEMONS' job responsibilities as the Assistant Property Manager for Cornerstone at Roxse Homes included selecting and admitting tenants, computing tenant rents and assistance payments, recertifying tenants and carrying out other responsibilities on behalf of Roxse Residences Limited Partnership in accordance with HUD rules, regulations and instructions.

13. There was a shortage of federally subsidized Section 8 housing in Massachusetts (*i.e.*, there were more qualified applicants seeking Section 8 housing than there were units

available). In accordance with HUD and MassHousing rules and regulations, preference was given to persons with disabilities and to elderly persons in need of housing. Other applicants had to be selected from long waitlists for subsidized rental units.

14. Roxse Homes received applications seeking subsidized apartments and maintained computerized waitlists of qualified low-income applicants for the subsidized apartments. Roxse Homes maintained three different waitlists: (a) a waitlist of current Roxse Homes tenants who had requested different Roxse Homes apartments based on disabilities (the reasonable accommodation waitlist), (b) a waitlist of current Roxse Homes tenants who had requested different Roxse Homes apartments (the internal waitlist), and (c) a waitlist of non-resident applicants for Roxse Homes apartments (the external waitlist).

15. When a Roxse Homes apartment became vacant, the management staff would first look to the reasonable accommodation waitlist, and then to the internal waitlist, for qualified tenants. Only if there were no qualified tenants for the particular apartment would the management staff look to the external waitlist to fill the vacancy.

16. The Roxse Homes external waitlist has been closed since in or around 2009. That is, no external applicants could be added to the waitlist for Roxse Homes apartments.

17. Individuals known to the grand jury, identified here as Applicant #1 through Applicant #7 (collectively, the Applicants), were individuals who sought subsidized apartments owned by Roxse Residences Limited Partnership.

18. None of the Applicants were eligible for subsidized apartments owned by Roxse Residences Limited Partnership, based on existing Roxse Homes waitlists and based on the priority rules for apartments owned by Roxse Residences Limited Partnership.

19. At no time has MassHousing, Roxse Residences Limited Partnership, Cornerstone, or any of their agents or employees, been authorized to solicit or accept payments from applicants seeking Section 8 housing, other than rental payments.

**The Conspiracy to Commit Bribery**

20. Beginning in or about September 2014, and continuing through in or about February 2015, the exact dates being unknown to the grand jury, in the District of Massachusetts and elsewhere, the defendants,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

and others known and unknown to the grand jury, did unlawfully and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the grand jury to commit an offense against the United States, to wit: being agents of an organization that received, in the one year period from January 1, 2014 through December 31, 2014, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy and other form of Federal assistance, to wit, Roxse Residences Limited Partnership, did corruptly solicit and demand for the benefit of any person, and accept or agree to accept, anything of value, with the intent to be influenced and rewarded in connection with any business, transaction and series of transactions of the organization involving a thing of value of $5,000 or more, in violation of Title 18 U.S.C. § 666(a)(1)(B).

21. It was the purpose and objective of the conspiracy to enrich its members by receiving payments in exchange for the rental of subsidized apartments at Roxse Homes.

**Manner and Means**

Among the means and methods by which the coconspirators carried out the conspiracy were the following:

22. It was part of the conspiracy that Defendant MORALES solicited and accepted money from individuals who wanted to be placed on the Roxse Homes external waitlist, ahead of other qualified applicants. MORALES provided those individuals with Preliminary Rental Applications for apartments at Roxse Homes, and instructed some of those individuals to falsify the Preliminary Rental Applications by, among other things, not dating the applications or dating the applications in 2006 or 2009, when in fact the individuals completed the applications in 2014 or 2015.

23. In order to achieve the goals of the conspiracy, Defendant LEMONS caused the individuals to be added to the computerized waitlist at Roxse Homes, and manipulated the waitlist so that those individuals had the dates of their applications in the Roxse Homes computer system changed to a date earlier than the date on which they actually submitted their applications. It was the intent of the coconspirators that this manipulation of the computerized waitlist would result in the applicants who paid money to MORALES being offered apartments before other qualified applicants who had applied before them in violation of HUD's rules and regulations.

**Overt Acts**

In furtherance of the conspiracy, and to effect the objects thereof, the defendants committed, and caused to be committed, the following overt acts, among others, in the District of Massachusetts and elsewhere:

<u>Applicant #1</u>

24. Between January 1, 2014 and October 31, 2014, Coconspirator #1, an individual known to the grand jury, told Applicant #1 that she knew someone who could get them applications for apartments at Roxse Homes.

25. Coconspirator #1 subsequently gave Applicant #1 a Preliminary Rental Application for a Roxse Homes apartment and instructed Applicant #1 not to date the application.

26. Before October 31, 2014, Coconspirator #1 instructed Applicant #1 that Applicant #1 would need to pay an $800 cash deposit to speed up the process and ensure that Applicant #1 got an apartment at Roxse Homes.

27. Before October 31, 2014, Applicant #1 gave the completed Preliminary Rental Application and $800 cash to Coconspirator #1. At Coconspirator #1's instruction, Applicant #1 did not date the application.

28. On or about November 3, 2014, LEMONS added Applicant #1's name to the Roxse Homes computerized waitlist. LEMONS falsely entered Applicant #1's application date in the waitlist as August 15, 2006.

29. Before November 24, 2014, MORALES told Applicant #1 by telephone that Applicant #1 would be on a small waitlist for an apartment, but offered assurances that Applicant #1 would receive an apartment.

30. Before November 24, 2014, MORALES showed Applicant #1 an apartment at Roxse Homes, and assured Applicant #1 that she would receive an apartment.

31. On or about November 24, 2014, Applicant #1 moved into a two bedroom apartment at Roxse Homes.

Applicant #2

32. Before December 15, 2014, MORALES told Applicant #2 that she would need to pay him $7,000 in cash for an apartment at Roxse Homes.

33. Before December 15, 2014, Applicant #2 gave MORALES $7,000 in cash in exchange for an apartment at Roxse Homes.

34. On or about November 6, 2014, LEMONS added Applicant #2's name to the Roxse Homes computerized waitlist. LEMONS falsely entered Applicant #2's application date in the waitlist as August 15, 2006.

35. On or about December 15, 2014, Applicant #2 moved into a two bedroom apartment at Roxse Homes.

Applicant #3

36. Before November 17, 2014, Coconspirator #2, an individual known to the grand jury, told Applicant #3 that he knew someone who worked in the Roxse Home maintenance department who could get Applicant #3 a three bedroom apartment for $6,000 in cash. Coconspirator #2 told Applicant #3 that Applicant #3 would have to pay $3,000 in cash when Applicant #3 handed in the application for the apartment, and the other $3,000 after Applicant #3 was given the keys to the apartment.

37. Before November 17, 2014, Coconspirator #2 gave Applicant #3 a Preliminary Rental Application for a Roxse Homes apartment.

38. Before November 17, 2014, Applicant #3 gave MORALES her completed Preliminary Rental Application for a three bedroom Roxse Homes apartment, along with $3,000 in cash.

39. On or about November 17, 2014, LEMONS added Applicant #3's name to the Roxse Homes computerized waitlist. LEMONS falsely entered Applicant #3's application date in the waitlist as December 28, 2009.

Applicant #4

40. Before December 10, 2014, MORALES told Applicant #4 that MORALES would get Applicant #4 an apartment quicker if Applicant #4 gave MORALES $2,500 and then another $2,500 when Applicant #4 got an apartment.

41. Before December 10, 2014, MORALES met with Applicant #4 and gave Applicant #4 a blank Preliminary Rental Application for Roxse Homes. MORALES instructed Applicant #4 to date the application in 2006.

42. Shortly thereafter, Applicant #4 delivered to MORALES a completed Preliminary Rental Application for a three bedroom Roxse Homes apartment, dated "8-15-2006" as instructed by MORALES, along with $2,500 in cash.

43. On or about December 10, 2014, LEMONS added Applicant #4's name to the Roxse Homes computerized waitlist. LEMONS falsely entered Applicant #4's application date in the waitlist as August 15, 2006.

44. MORALES subsequently spoke to Applicant #4 approximately twice by telephone, and assured Applicant #1 that an apartment would be available for Applicant #4.

Applicant #5

45. Before December 12, 2014, MORALES told an individual known to the grand jury and identified here as John Doe #1 that MORALES had a way of getting apartments quicker for people.

46. Before December 12, 2014, MORALES gave John Doe #1 a blank Preliminary Rental Application for a Roxse Homes apartment, and told John Doe #1 that it would cost $5,000 cash for the apartment. MORALES told John Doe #1 that he would have to pay $2,500 for the application and the other $2,500 when the first month's rent was paid.

47. On or before December 12, 2014, John Doe #1 filled out a Preliminary Rental Application in the name of Applicant #5, for a one bedroom Roxse Homes apartment, in the presence of MORALES and at MORALES' instruction.

48. Shortly after completing the Preliminary Rental Application for a Roxse Homes apartment, John Doe #1 gave MORALES $2,500 in cash for Applicant #5's application.

49. On or about December 12, 2014, LEMONS added Applicant #5's name to the Roxse Homes computerized waitlist. LEMONS falsely entered Applicant #5's application date in the waitlist as August 10, 2006.

Applicant #6

50. Before December 30, 2014, MORALES told an individual known to the grand jury and identified herein as John Doe #2 that there was a way John Doe #2 could get an apartment, but that John Doe #2 would have to pay $5,000 to MORALES for the apartment. MORALES told John Doe #2 that he would need to pay $2,500 with the application, and $2,500 when he got the apartment.

51. Before December 30, 2014, MORALES gave John Doe #2 a blank Preliminary Rental Application for a Roxse Homes apartment. MORALES instructed John Doe #2 not to put a date on the application.

52. On or about December 30, 2014, John Doe #2 and Applicant #6 gave MORALES a completed Preliminary Rental Application for a two bedroom Roxse Homes apartment, undated at

MORALES' instruction, along with $2,500 in cash.

53. On or about December 30, 2014, LEMONS added Applicant #6's name to the Roxse Homes computerized waitlist. LEMONS falsely entered Applicant #6's application date in the waitlist as August 15, 2006.

Applicant #7

54. In or around November 2014, MORALES told an individual known to the grand jury and identified here as John Doe #3 that MORALES could get John Doe #3 an apartment. MORALES told John Doe #3 that he would have to pay MORALES $2,500 with an application and another $2,500 when he got a key to the apartment.

55. Shortly thereafter, MORALES gave John Doe #3 a blank Preliminary Rental Application for a Roxse Homes apartment.

56. In or around November 2014, MORALES instructed Applicant #7 to fill out the application using Applicant #7's information from five years prior to November 2014.

57. In or around late November 2014, John Doe #3 gave MORALES a completed Preliminary Rental Application for a three bedroom Roxse Homes apartment, completed with Applicant #7's information from five years prior at MORALES' instruction, along with $2,500 in cash.

58. On or about February 10, 2015, in response to several attempts by John Doe #3 to contact MORALES, MORALES texted John Doe #3 stating, "Can't talk right now . . . I'll call you later."

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**
(18 U.S.C. § 666 – Corrupt Receipt of Payments by

Agent of Federally Funded Organization)

59. Paragraphs 1 through 19 and 22 through 31 are re-alleged and incorporated herein.

60. Between in or about October 2014 and in or about November 2014, in the District o Massachusetts and elsewhere, the defendants,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

being agents of an organization that received, in the one year period from January 1, 2014 through December 31, 2014, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy and other form of Federal assistance, to wit, Roxse Residences Limited Partnership, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value, with the intent to be influenced and rewarded in connection with any business, transaction and series of transactions of the organization involving a thing of value of $5,000 or more, in that the defendants did demand and accept and agree to accept cash from Applicant #1 in exchange for the rental of an apartment at Roxse Homes.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

**COUNT THREE**
(18 U.S.C. § 666 – Corrupt Receipt of Payments by
Agent of Federally Funded Organization)

61. Paragraphs 1 through 19, 22, 23, and 32 through 35 are re-alleged and incorporated herein.

62. Between in or about October 2014 and in or about December 2014, in the District o Massachusetts and elsewhere, the defendants,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

being agents of an organization that received, in the one year period from January 1, 2014 through December 31, 2014, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy and other form of Federal assistance, to wit, Roxse Residences Limited Partnership, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value, with the intent to be influenced and rewarded in connection with any business, transaction and series of transactions of the organization involving a thing of value of $5,000 or more, in that the defendants did demand and accept and agree to accept cash from Applicant #2 in exchange for the rental of an apartment at Roxse Homes.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

**COUNT FOUR**
(18 U.S.C. § 666 – Corrupt Receipt of Payments by
Agent of Federally Funded Organization)

63. Paragraphs 1 through 19, 22, 23, and 36 through 39 are re-alleged and incorporated herein.

64. In or about November 2014, in the District of Massachusetts and elsewhere, the defendants,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

being agents of an organization that received, in the one year period from January 1, 2014 through December 31, 2014, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy and other form of Federal assistance, to wit, Roxse Residences Limited Partnership, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value, with the intent to be influenced and rewarded in connection with any business, transaction and series of transactions of the organization involving a thing of value of $5,000 or more, in that the defendants did demand and accept and agree to accept cash from Applicant #3 in exchange for the rental of an apartment at Roxse Homes.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

**COUNT FIVE**
(18 U.S.C. § 666 – Corrupt Receipt of Payments by
Agent of Federally Funded Organization)

65. Paragraphs 1 through 19, 22, 23, and 40 through 44 are re-alleged and incorporated herein.

66. In or about December 2014, in the District of Massachusetts and elsewhere, the defendants,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

being agents of an organization that received, in the one year period from January 1, 2014 through December 31, 2014, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy and other form of Federal assistance, to wit, Roxse Residences Limited Partnership, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value, with the intent to be influenced and rewarded in connection with any business, transaction and series of transactions of the organization involving a thing of value of $5,000 or more, in that the defendants did demand and accept and agree to accept cash from Applicant #4 in exchange for the rental of an apartment at Roxse Homes.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

**COUNT SIX**
(18 U.S.C. § 666 – Corrupt Receipt of Payments by
Agent of Federally Funded Organization)

67. Paragraphs 1 through 19, 22, 23, and 45 through 49 are re-alleged and incorporated herein.

68. In or about December 2014, in the District of Massachusetts and elsewhere, the defendants,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

being agents of an organization that received, in the one year period from January 1, 2014 through December 31, 2014, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy and other form of Federal assistance, to wit, Roxse Residences Limited Partnership, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value, with the intent to be influenced and rewarded in connection with any business, transaction and series of transactions of the organization involving a thing of value of $5,000 or more, in that the defendants did demand and accept and agree to accept cash from John Doe #1 in exchange for the rental of an apartment at Roxse Homes.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

**COUNT SEVEN**
(18 U.S.C. § 666 – Corrupt Receipt of Payments by
Agent of Federally Funded Organization)

69. Paragraphs 1 through 19, 22, 23, and 50 through 53 are re-alleged and incorporated herein.

70. In or about December 2014, in the District of Massachusetts and elsewhere, the defendants,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

being agents of an organization that received, in the one year period from January 1, 2014 through December 31, 2014, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy and other form of Federal assistance, to wit, Roxse Residences Limited Partnership, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value, with the intent to be influenced and rewarded in connection with any business, transaction and series of transactions of the organization involving a thing of value of $5,000 or more, in that the defendants did demand and accept and agree to accept cash from Applicant #6 and John Doe #2 in exchange for the rental of an apartment at Roxse Homes.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

**COUNT EIGHT**

(18 U.S.C. § 666 – Corrupt Receipt of Payments by Agent of Federally Funded Organization)

71. Paragraphs 1 through 19, 22, 23, and 54 through 58 are re-alleged and incorporated herein.

72. In or about November 2014, in the District of Massachusetts and elsewhere, the defendants,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

being agents of an organization that received, in the one year period from January 1, 2014 through December 31, 2014, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy and other form of Federal assistance, to wit, Roxse Residences Limited Partnership, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value, with the intent to be influenced and rewarded in connection with any business, transaction and series of transactions of the organization involving a thing of value of $5,000 or more, in that the defendants did demand and accept and agree to accept cash from John Doe #3 in exchange for the rental of an apartment at Roxse Homes.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

The grand jury further charges that,

1. Upon conviction of one or more of the offenses set forth in Counts One through Eight of this Indictment,

**(1) MATHIS LEMONS, and**
**(2) ISMAEL MORALES,**

defendants herein, shall forfeit to the United States, jointly and severally, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

2. If any of the property described in paragraph 1 above, as a result of any act or omission of the defendants --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of this Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

A TRUE BILL,

FOREPERSON OF THE GRAND JURY

KRISTINA E. BARCLAY
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS September 8, 2015

Returned into the District Court by the Grand Jurors and filed.

Deputy Clerk
1:25 p.